UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL JANSEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SYSTEM SERVICES OF AMERICA,<br>INC., a corporation, et al.,<br><br>Defendants. | Case No. 5:19-cv-00120 AB (SHKx)<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION TO REMAND** |

On January 31, 2019, Plaintiff Cheryl Jansen ("Plaintiff") filed a Motion to Remand. (Dkt. No. 12.) Defendant System Services of America, Inc. ("Defendant SSA") opposed the motion and Plaintiff filed a reply. (Dkt. Nos. 14, 15.) The Court heard oral argument on March 1, 2019. For the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand.

## I. BACKGROUND

### A. The Parties

Plaintiff Cheryl Jansen is a resident of California. First Amended Complaint ("FAC") ¶ 4 (Dkt. No. 12.) Plaintiff began working for System Services of America, Inc. ("SSA") as a Customer Service Representative and/or Receptionist around January 16, 1989. (FAC ¶ 16.) During Plaintiff's tenure at SSA, she was supervised by Defendants Rick Toneck and Dianna Bailey Thompson ("Toneck" and

"Thompson", respectively).  (FAC ¶ 17.)  Around October 19, 2017, Plaintiff sought medical treatment for work-related stress.  (FAC ¶ 25.)  Plaintiff was placed on medical leave until November 13, 2017, but was terminated from SSA after 28 years of employment on November 1, 2017. (FAC ¶ 25–26.)  At the time of Plaintiff's termination, she was 63 years old.  (FAC ¶ 27.)

Defendant SSA is a Delaware corporation with its principal place of business in Arizona.  (Notice of Removal,  ¶¶ 10, 12 (Dkt. No. 1)).  Defendants Toneck and Thompson are residents of California.  (FAC ¶¶ 6-7.)

**B. Plaintiff's Allegations**

Plaintiff alleges that Toneck and Thompson abused their positions of authority by micromanaging and disciplining Plaintiff, and increasing her workload.  (FAC ¶ 22.)  Plaintiff also alleges that Toneck had a history of forcing older workers into a warehouse "freezer rotation," as a way to get them to quit or resign.  (FAC ¶ 19.)  Additionally, Plaintiff asserts that Toneck and Thompson's conduct created a hostile work environment that caused Plaintiff to suffer work-related injuries.  (FAC ¶ 21.)  Further, Plaintiff alleges that Toneck told Frances Villegas ("Villegas"), an Associate Service Specialist who suffered age-based harassment and discrimination, that "they should start working the older people out of the system." (FAC ¶ 20.)  Plaintiff asserts that Toneck and Thompson's actions established that they had animus against older workers, including Plaintiff. (FAC ¶ 23.)

Plaintiff raised several claims solely against Defendant SSA.  However, Plaintiff asserts three causes of action against Defendant SSA, Toneck, and Thompson for: (1) harassment ; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress.  (*See* FAC.)

**C. Removal to this Court**

On January 22, 2019, Defendant SSA removed this case to this Court from the San Bernardino County Superior Court.  (*See* Notice of Removal.)  According to Defendant SSA, the Court has subject matter jurisdiction over this case because there

is complete diversity of citizenship amongst the parties. *Id.* Defendant SSA alleges that Defendants Toneck and Thompson are "sham" defendants that are to be disregarded when evaluating diversity of citizenship. *Id.*, ¶ 5.

## II.   LEGAL STANDARD

### A.   Removal

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Under 28 U.S.C. § 1441(b) ("Section 1441"), a civil action may be removed to the district court where the action is pending if there is diversity jurisdiction.   A federal district court has diversity jurisdiction over a dispute between "citizens of different States" that places more than $75,000 in controversy, exclusive of interest and costs.   28 U.S.C. § 1332(a).   Section 1332(a)(1) requires complete diversity such that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).   Section 1441(b)(2) further limits removal to cases in which no defendant "properly joined and served . . . is a citizen of the State in which such action is brought."   28 U.S.C. § 1441(b)(2).

### B.   Diversity Jurisdiction–Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "Fraudulent joinder" occurs, for the purpose of determining diversity jurisdiction, where the plaintiff fails to state a cause of action against the resident defendant, and failure is obvious according to settled rules of state. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987).   "But if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir.

3.

2018) (quotations omitted).

The defendant has a high burden of proof when establishing fraudulent joinder. A removing defendant may present evidence to prove fraudulent joinder, but the district court must resolve all disputed questions of fact in the plaintiff's favor. *See Grancare*, 889 F.3d at 549. Thus, a defense should not require "a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.* In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure [a] purported deficiency" in its allegations against the non-diverse defendant. *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quotations omitted). Ultimately, "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

## III. DISCUSSION

### A. The Court Does Not Have Subject Matter Jurisdiction

As stated above, Defendant SSA asserts that there is complete diversity of citizenship because Toneck and Thompson are "sham" defendants that should be ignored for purposes of determining diversity jurisdiction. (Notice of Removal ¶ 5.) Plaintiff, Toneck, and Thompson are citizens of California. (*See* FAC.) Defendant SSA is a citizen of Delaware and Arizona. (Notice of Removal ¶ 10.) Thus, absent Plaintiff's claims against Toneck and Thompson, diversity jurisdiction exists. In the alternative, the Court cannot maintain diversity jurisdiction and allow removal under 28 U.S.C. § 1441(b)(2) if Toneck and Thompson are, in fact, properly joined defendants. Therefore, subject matter jurisdiction rests on the issue of whether there is complete diversity because the parties do not dispute that the amount in controversy, in this case, exceeds $75,000.

#### 1. Harassment Claim

For a claim to constitute harassment, a plaintiff must demonstrate that a defendant's conduct was "sufficiently severe or pervasive to 'alter the conditions of

4.

[the victim's] employment and create an abusive work environment.'" *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 609 (Cal. Ct. App. 1989) (citation omitted). When determining if the conduct complained of is sufficiently pervasive or severe, a court should look at the totality of the circumstances. *Id.* at 610. Additionally, it is established that "harassment by a high-level manager of any organization may be more injurious to the victim because of the prestige and authority that the manager enjoys." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (Cal. 2009).

Here, Plaintiff's allegations, when viewed in the totality of the circumstances, support a plausible harassment claim against Toneck and Thompson. Plaintiff alleges: " (1) [that] Mr. Toneck expressly stat[ed] to human resources that the older workers should be worked out of the system; (2) that Mr. Toneck wrongfully terminated Ms. Villegas, a prior victim of age discrimination of SSA, by recommending and influencing her dismissal; (3) that Ms. Thompson and Mr. Toneck sent a discriminatory message through their acts of supervising by issuing and authorizing discipline . . . , providing a PIP plan . . . , and terminating a long term worker despite her being granted an accommodation of medical leave then terminated her while on leave (younger workers were not [treated in the same manner, nor] denied the same accommodations); and (4) before her termination, Ms. Thompson also unfairly treated Ms. Villegas by reporting Ms. Villegas despite having no job duties of supervision over her." (Dkt. No. 15 at 5.) These allegations, examined in Plaintiff's favor, are sufficient to establish that a California state court could find that Toneck and Thompson created a hostile or abusive work environment.

Defendant SSA argues that Toneck assigned "other employees (and not Plaintiff), to work in the freezer area." (Dkt. No. 14 at 9.) However, California law establishes that "'[e]vidence of the general work atmosphere, involving employees other than the plaintiff, is relevant to the issue of whether there existed an atmosphere of hostile work environment.'" *Fisher*, 214 Cal. App. 3d at 610. Here, if all of Plaintiff's allegations are taken as true, Plaintiff not only witnessed employees getting

assigned to freezer duty simply because they were older, but also witnessed the unfair and discriminatory treatment of Villegas, an older employee, that eventually led to her termination.  Additionally, Plaintiff was micromanaged and disciplined in a manner similar to Villegas, creating a belief that her age and newfound disability were the reasons for her employer's severe treatment of her.  These assertions alone are enough to establish a hostile work atmosphere for an older employee, such as Plaintiff.

Further, Defendant SSA asserts that Toneck and Thompson's comments and actions were not pervasive in comparison to the supervisor in *Roby*.  However, "[w]ith respect to the pervasiveness of harassment, courts have held an . . . employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature."  *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006).  Here, the only isolated incident mentioned throughout Plaintiff's list of claims was a comment made by Toneck to Villegas regarding age.  On the other hand, Plaintiff claims that forcing older workers to freezer duty was a "business practice" accepted and implemented by Defendants.  Ultimately, establishing conduct of a generalized nature.

Finally, Defendant SSA's reliance on *Roby* to assert that a "widespread pattern of bias" is necessary to establish managerial liability for harassment, is inapposite.  While true that "micromanaging and discipline" in the workplace may fall under the scope of "personnel management actions," this does not excuse the several other allegations made against Thompson and Toneck.  Nonetheless, all allegations are to be viewed in the totality of circumstances, and thus, establish a plausible claim for harassment.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand.  The matter is remanded to San Bernardino Superior Court.  On February 6, 2019, Defendant filed a Motion to Compel Arbitration and Stay Court Proceedings.  The Court took the matter under submission on March 5, 2019.  Defendant's Motion is

hereby **denied as moot** pursuant to the Court's Order remanding the matter to state court.

**IT IS SO ORDERED.**

Dated: March 18, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE